THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.* RICHARD LEROY MYLES, Defendant-Appellant.

(No. 70-104;

Third District—June 16, 1971.

John Barton, of Defender Project, of Ottawa, for appellant.

James N. DeWulf, State's Attorney, of Rock Island, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Richard LeRoy Myles was indicted on two counts, one charging burglary, and the other count charging possession of burglary tools. He was indicted with Robert Sheffey and Robert Hardin as co-defendants. The burglary involved entry into a tavern and the theft of money, cigarettes, and liquor. Both Sheffey and Hardin pleaded guilty to the burglary. Defendant was sentenced to from 5 to 15 years for Burglary and from 1 to 2 years for Possession of Burglary Tools with the sentences to be served concurrently.

Defendant was arrested at the scene of the burglary by police officers. At the time of his arrest warnings were read to him from a card carried by one of the officers. These warnings were patterned on directives outlined in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 694, 86 S.Ct. 1602. Defendant was then taken to the Rock Island Police Department, together with some evidence which had been seized, and with various burglary tools which were found in the automobile which defendant was operating at the time of his arrest. Additional burglary tools were later seized from the trunk of defendant's automobile. At about 6:00 A.M. on the morning following defendant's arrest, defendant was removed from his cell at the police department and brought to the detective division by one of the detectives. Prior to any questioning the defendant was given a sheet of paper entitled "Your Rights". He was told to read, initial and sign it if he understood it. Defendant stated that he already had received one and that he knew what his rights were. This did not satisfy the police detective who read the "Rights" sheet to defendant. Defendant then initialed five of the enumerated seven rights but refused to initial two of

the rights and also refused to sign the waiver at the bottom of the "Rights" sheet.

Following the explanation of defendant's rights and defendant's indication that he did not wish to make a statement without an attorney present, defendant voluntarily initiated a conversation with the police detective in which inculpatory statements were made. During this conversation questions were asked by the detective. Defendant testified that in spite of the conversation which followed two or three explanations of defendant's rights, he, the defendant, did not realize he was being questioned for the purpose of obtaining a statement nor did he realize that an oral as well as a written statement could be used against him in a court of law. He also stated that he made the inculpatory statement because he wasn't awake at the time, and, also, that he believed he was drunk at the time the statement was made. There was no supporting evidence as to the claim of intoxication.

On appeal in this Court, defendant contends that the court erred in denying that defendant's motion to suppress defendant's admissions principally on the ground that the State did not demonstrate that defendant was sufficiently warned of his constitutional rights under the precedent of *Miranda v. Arizona, supra,* and, also, on the premise that the evidence showed that defendant refused to waive his privilege against self-incrimination and his right to counsel. Defendant likewise contends that it was reversible error for the trial court to enter judgment on the verdict of guilty of possession of burglary tools and argues that such possession of burglary tools was a "lesser included offense" of the crime of burglary.

It is clear that defendant was arrested at the scene of the burglary and was immediately read a card describing his rights under the *Miranda* precedent. He was advised that he had the right to remain silent; that anything he would say could or would be used against him in a court of law; that he had the right to talk to a lawyer and have him present while he was being questioned; that if he could not hire a lawyer, one would be appointed to represent him before any questioning, if he desired. Again, at 6:00 A.M. the following morning, when he was brought to the detective division he was given a sheet of paper entitled "Your Rights" and was told to read, initial and sign it if he understood it. He stated that he already had received one and that he knew what his rights were. Despite this, the detective read the rights on the sheet to defendant which again reminded defendant that he had the right to remain silent; that anything he said or answered to any question could be used against him in a court of law; that he had a right to have an attorney present

during the questioning; that if he could not afford an attorney, the court would appoint one for him without charge; that if he gave a statement now without an attorney present he would have the right to stop answering questions at any time. As indicated, defendant initialed five of the seven rights but refused to sign a waiver. At the time of the making of the motion to suppress the admissions, there was no contention that there was a failure to sufficiently warn defendant of his rights, but only that there was no waiver of those rights signed by defendant. Defendant had verified by his own testimony, on cross-examination, that he was told he had the right to remain silent and had the right to an attorney. The trial court, on examining the defendant, found that the inculpatory statement was completely voluntary by defendant's own admission.

■■ While defendant failed to raise the issue of the alleged insufficiency in the constitutional warnings in his motion for a new trial, and may have waived such issue on appeal (*People v. Irwin*, 32 Ill.2d 441, 207 N.E.2d 76), we believe that the evidence showed that defendant had received ample warning of his rights, and that the *Miranda* decision had been followed by the arresting officers and the police detective. It is apparent from the record that the admission of defendant was voluntarily initiated in a conversation with the police detective and the incriminating remarks were made as a result thereof. The fact that defendant refused to sign the waiver at the bottom of the "Rights" sheet under such circumstances would not preclude the State from using the subsequent admission which was voluntarily made by defendant (*People v. Long*, 119 Ill. App.2d 75, 255 N.E.2d 491). In the *Long* case it was indicated that where a defendant freely answers questions after an explanation of his rights, this is sufficient to rebut the normal presumption against a waiver of his constitutional rights.

■■ In the cause before us, defendant had admitted that he had been given his rights "two or three times" prior to making the incriminating admission. No promises or threats were made, and even though he was told he had a right to have a lawyer present, he "didn't remember" if he had asked for one. The incriminating remarks resulted from a conversation which defendant had with the detective after defendant had asked the detective what he was charged with. What he said to the detective was voluntarily offered. There was nothing to show that defendant was of substandard intelligence, and, on the basis of his criminal record, the impact of being in custody was apparently not a new experience for him. From an examination of the record, therefore, we do not believe that there was a violation of defendant's constitutional rights and that the court was not in error in refusing to suppress the introduction

of the incriminating remarks. We also note that the evidence in the cause, apart from the oral statement made by defendant, sufficiently establishes that defendant was guilty of burglary and possession of burglary tools. He was apprehended at the scene of the crime with the fruits of the crime and burglary tools in his automobile. At the trial he was identified by both of his accomplices as being involved in the burglary. There was nothing in defendant's oral statement which established any element of the crime on the part of defendant which had not been established more effectively by other competent evidence. The admission of the oral statement, therefore, would fall into the category of harmless error even if its admission was erroneous, as indicated in the case of *People v. Landgham*, 122 Ill.App.2d 9, 257 N.E.2d 484, 491.

Consideration of the issue of whether the trial court properly entered judgment and sentenced defendant in this cause for possession of burglary tools requires an explanation of this issue. Cases cited by appellant in this cause, *People v. Stewart*, 45 Ill.2d 310, 259 N.E.2d 24 and *People v. Stevenson*, 107 Ill.App.2d 441, 246 N.E.2d 309, would not apply generally to the issue before use since those cases do not deal with a burglary and possession of burglary tools situation, but with cases of aggravated battery as an incident to robbery in the *Stewart* case, and of burglary and theft in the *Stevenson* case. The courts in those cases properly found that the imposition of concurrent sentences for the same conduct or inseparable acts was not appropriate there.

■■ Burglary and possession of burglary tools are separate acts, and do not ordinarily arise from the same conduct, unless the possession is shown to be exclusively and solely for the purpose of committing the crime of burglary for which a defendant is convicted. Burglary requires proof of defendant's unauthorized entry of premises of another with intent to commit a felony or theft, while possession of burglary tools requires defendant's possession of tools or instruments suitable for use in the commission of a burglary with intent to commit a burglary (1969 Illinois Revised Statutes, ch. 38 pars. 19—1, 19—2). Possession of burglary tools does not necessarily cover a specific intent to commit a particular burglary but only a "generalized" intent, without regard to a particular person or designated property (*People v. Johnson*, 88 Ill.App. 2d 265, 232 N.E.2d 554). It is stated that the victims of each offense differ in that the victim of a burglary is a specific person or persons., while the victim of possession of burglary tools is deemed to be society in general. When the act of burglary is consummated, only a certain person or persons have felt the impact of the offense, whereas the offense of possession of burglary tools, when such possession is consummated with the requisite intent, subjects all of society to the possibility that

anyone in the future may be the victim of the crime. It is, therefore, apparent that possession of burglary tools is not necessarily a lesser included offense of the crime of burglary.

■■ In the cause before us, the record discloses that when defendant made a motion for a bill of particulars (as to the charge of possession of burglary tools), the State's Attorney advised the court that the State was relying on the burglary charged in Count I to prove the intent to commit burglary with tools charged in Count II relating to burglary tools. Since the record indicates only that the possession of burglary tools may have been for the sole purpose of committing the burglary of the tavern, it was error to enter a separate judgment and sentence on this charge. It may only have involved specifically the same conduct as was involved in the burglary of the tavern. This would not have been the case if there was no specific place designated as the limited objective of the use of the burglary tools, or if it was referred to as only one of the places to be burglarized, with others unknown.

Accordingly, the judgment and sentence of the Circuit Court of Rock Island County with respect to the burglary conviction of defendant is affirmed. The judgment and sentence entered for possession of the burglary tools as to defendant is reversed.

Affirmed in part and reversed in part.

STOUDER and SCOTT, JJ., concur.